BICE, APPELLANT, v. HOVER ET AL., APPELLEES.

1. PRINCIPAL'S LIABILITY.

B., the owner of a store, turned the business over to G., who was to
run it in the interest of B. at a definite wage, which was to be de-
termined by the success or failure of the enterprise, conducted un-
der a new name. *Held*, that the business remained B.'s, who was
liable for debts incurred in the purchase of goods, unless he re-
lieved himself by definite notice to the persons with whom the store
commonly dealt, or such information was brought home to the
vendors of goods in such a way as to render it inequitable to hold
B. therefor.

2. CONFLICTING TESTIMONY—REVIEW OF.

Where the verdict rests on conflicting testimony, which would warrant
the jury in reaching their conclusion, the verdict will not be dis-
turbed.

*Appeal from the District Court of Arapahoe County.*

IN the early summer of 1887, Mark Bice, the appellant,
bought from Troxwell a drug store situated on the corner of
18th and Curtis streets in the city of Denver. He ran the
store in his own name until sometime in August of that year,
when he formed some sort of a business connection with a
person by the name of Watson. From that date the busi-
ness was continued in the name of Watson & Company to
about June, 1888. During all this time the concern bought
goods of Hover & Company who are wholesale druggists in
the city. The accounts seem to have been settled by Doctor

Bice as they accrued, and he made no question as to his re-
sponsibility prior to June, 1888, and paid whatever accounts
were rendered him. ..About that time he entered into an
agreement with one Benoni S. Greathouse. The contract
was somewhat lengthy, and in general terms provided that
Greathouse should take charge of, and manage the store, and
receive as a salary or compensation for his labor the net pro-
ceeds resulting from the business, subject to certain specific
deductions. The contract is construed in the opinion, but
need not be set out to enable the decision to be understood.
The present suit was brought by Hover & Company against
Bice to recover for sundry purchases made between the time
that Greathouse was put in charge, and the time when he
was relieved in the ensuing December. The real defense
was that Bice was not liable to Hover & Company for the
purchases which Greathouse made. There was no question
concerning the delivery of the goods or the price. It was
simply a matter of legal responsibility. The case was tried
to a jury which rendered a verdict against Bice who appeals.

Mr. CHAS. M. BICE, for appellant.

Mr. R. D. THOMPSON, for appellee.

BISSELL, J., after stating the case, delivered the opinion
of the court.

The rights of these parties are to be ascertained and set-
tled by the terms of the contract entered into between Mark
Bice the appellant and Benoni S. Greathouse, and the course
of dealing between the several parties and Hover & Com-
pany, the appellees. It would not profit the profession to
set out the contract, for it is not within the range of proba-
bilities that any similar instrument will be submitted to the
courts for construction and adjudication during the probable
continuance of the legal profession. It will be deemed
enough to state generally the conclusions at which the court

has arrived concerning its proper interpretation. It consists of fifteen paragraphs. Some of them taken alone would seem to make the contract one of sale of a stock of goods and the transfer of the rights of Doctor Bice in the premises; eliminating these provisions and considering others alone, and it contains many of the elements of contract of lease; the remaining provisions very clearly establish the contract to be one of a hiring. As a whole it can scarcely be said to permit an interpretation which shall adjudge the agreement to be one of sale. The title to the drugs, to the fixtures, and whatever was connected with the store did not pass absolutely to Greathouse, but remained the property of Doctor Bice, and at the end of a year could be re-transferred to him, or turned over into his possession, and to the extent to which they were then *in esse* would fully satisfy Greathouse's promise in regard to them. Evidently this circumstance very conclusively demonstrates that in no proper and legal sense was there a sale of the property. It is likewise plain that it lacked many of the elements that are always to be found in a contract of lease. While the term appeared to be certain, and for a year, in fact it was only at the will of Doctor Bice, and subject to a performance of all the conditions with reference to the conduct of the business by Greathouse; there was no specific rent reserved, nor can it be ascertained from the terms of the contract whether Bice was in reality the landlord leasing to Greathouse, or whether Bice himself was a tenant who sought to sublet the property and whatever leasehold rights may have been attached to it to the subtenant Greathouse. In many other ways, were it necessary, it could be demonstrated that the agreement lacked many things ordinarily found in a lease and essential to the creation of such an interest. When these difficulties are considered and resort is had to two other provisions contained in the contract, it becomes evident that the only legitimate construction to be put upon the convention is that which determines it to be a contract of hiring. The first paragraph provides that Greathouse shall work and operate to the best

of his ability the store referred to; the 11th paragraph compels him to surrender possession whenever he shall contract debts in the purchase of goods beyond a specific sum, and also whenever he is found incapable from any cause to carry on the business without injury to it; by the 14th paragraph they agree that Greathouse shall receive as a salary for doing the work incident to the management of the business a sum co-equal with the profits, less certain deductions which were specifically provided for. It is our conclusion then, that the contract in reality was one whereby Doctor Bice turned over the business to Greathouse, who was to run it in the interest of the doctor, at a definite wage which would be determined by the success or failure of the enterprise. If this be true, the business remained the doctor's, and he would be liable for whatever indebtedness might be incurred in the purchase of goods, and in its general transactions, unless he relieved himself from that liability by a definite notice to the persons with whom the store commonly dealt, or in some way known to the law, such information was brought home to the vendors of the goods as would render it inequitable for them to hold the doctor liable for what they sold. The whole history of the transaction negatives any such conclusion. For upwards of a year prior to the time Greathouse was put in possession, the store had been run, either by the doctor himself, or under the name of Watson & Company, and during all this time he held himself out as personally responsible for whatever supplies the store might procure, and he paid the bills as they accrued and matured. During this time he had been dealing with the appellees, Hover & Company, and buying and paying for the goods furnished by them. When Greathouse went into possession he continued purchasing goods for the store, which was thereafter run in the name of the O. K. Drugstore, in place of Watson & Company which had been the previous form of its title. There is some controversy as to what information was given to Hover & Company, and whether they received notice that Greathouse was to be solely responsible for his purchases. Whatever might

be our conclusion upon the record as to what the facts were, the verdict of the jury in favor of the appellees clearly settles all these controverted questions of fact against the appellant Bice. Under our well settled rule we cannot interfere with that finding and verdict, so long as it rests upon conflicting testimony which would warrant the jury to reach the conclusion. Without the aid of the rule, we should be disinclined to interfere, since it seems to be in full accord with the fair preponderance of the testimony. According to the contract and its fair legal result, the goods were really purchased by Greathouse as agent of Doctor Bice. The attempt to change the condition of affairs, and to relieve Bice from the responsibility for subsequent purchases, was not successful, and he must be held liable both because of the legal agency and by reason of the course of the dealing antecedently had between the parties, and because the circumstances of the subsequent transactions were such as to warrant Hover & Company in assuming and believing that Greathouse was Bice's agent. As to them he was held out as such; they relied upon the responsibility of the supposed principal, who did nothing to relieve himself from liability, and he cannot complain when he is called on to pay for the goods.

The appellant insists that the case should be reversed because of the inaccuracy of some of the instructions given by the court. To demonstrate the incorrectness of this contention would render it necessary to set out the instructions in detail and review the entire evidence in the case. It is not deemed expedient to go to this extent; it is enough to state the conclusions of the court concerning the matters complained of. It might possibly be true that the instructions would be the subject of legitimate criticism if the hypothesis assumed by counsel, that the contract between Greathouse and Bice was one of lease was conceded. It will be observed that the court has already construed that contract to be one of employment. Under these circumstances, what the court said with reference to the change of posses-

sion in the property, the course of dealing between the parties, and the action which ought to have been taken by Bice in notifying Hover & Company of the change, accurately expressed the law applicable to this controversy.   This is likewise true of the instruction which told the jury what Hover & Company's duty was as to the inquiries which they ought to have made.   Taking the instructions together, they put the case fairly before the jury and could not have misled them as to any legal propositions on which they were entitled to legal information from the court.   This disposes of these assignments of error, without reference to the attempt to save the exception in the record.   Wherever an exception is necessary, and it appears as an addition to the bill prepared by the officers of the court, it ought not to be by a pencil insertion as in this case, for it is too liable to erasure, change and destruction.   The form should be permanent, and without the possibility of alteration.

The record presents no errors which will permit this court to disturb the judgment, and it will accordingly be affirmed.

*Affirmed.*